UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILLIE SMITH                                                    CIVIL ACTION

VERSUS                                                          NO. 11-2367

MICHAEL J. ASTRUE, COMMISSIONER                                 SECTION "F" (3)
SOCIAL SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner finding an overpayment under Titles II and XVI of the Social Security Act ("SSA") and denying plaintiff's request for waiver of overpayment. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.    BACKGROUND**

Plaintiff filed an application for Title II and Title XVI benefits on September 6, 1988. (Adm. Rec. at 188). His disability stemmed from a disorder of muscle, ligament and fascia (leg), and essential hypertension. (*Id.* at 20). Defendant awarded plaintiff disability benefits on September 19, 1989. (*Id.* at 188).

Plaintiff later returned to work as a pastor at Providence Baptist Church ("the Church") on

April 9, 1999. (*Id.* at 17, 104- 105). Defendant then found plaintiff's work as a pastor to be substantial gainful activity ("SGA") and found plaintiff entitled to a trial work period ("TWP") from April 1999 through December 1999. (*Id.* at 21, 184).[1] An extended period of eligibility ("EPE") began in January 2000. (*Id.* at 20).[2] His EPE later ended, and defendant ultimately terminated plaintiff's benefits as of January 2003. (*Id.* at 20, 184).

On August 18, 2003, Gwendolyn M. Lewis, District Manager of defendant's New Orleans field office, wrote to a secretary of the Church, inquiring into payments made in plaintiff's wife's name, Ledger Smith. (*Id.* at 128). Lewis also inquired about other employees of the Church, and if payments to these other employees were based on services performed by plaintiff. (*Id.*).

Defendant notified plaintiff by letter dated October 22, 2003 that an overpayment of disability insurance benefits had occurred due to payments made to him from April 2003 through September 2003, which overpayment totaled $7,860.00. (*Id.* at 27). Defendant determined that plaintiff had performed SGA after his TWP, and that plaintiff's disability had ceased in January

---

[1] The TWP is a period of time during which an individual who has been found disabled may test his ability to work and still be considered disabled. 20 C.F.R. § 404.1592(a). The period consists of performance of "services" during nine months, which do not need to be consecutive months, but which must occur within a period of sixty consecutive months. *Id.* § 404.1592(a), (e).

[2] The EPE is an additional period after the TWP during which an individual with a disabling impairment can continue to test her ability to work. 20 C.F.R. § 404.1592a(a). The EPE lasts for 36 continuous months after the end of the TWP. *Id.* § 404.1592a(b)(ii). However, if the individual performs substantial gainful activity during the EPE, defendant may find that the individual's disability has ceased and suspend payment of benefits. *Id.* § 404.1592a(a). If the individual stops performing substantial gainful activity during the EPE, defendant will resume payment of benefits. *Id.* If an individual's disability ceased during the EPE due to substantial gainful activity, his entitlement to benefits terminates the first month after the end of the EPE in which he again performed substantial gainful activity. *Id.* § 404.1592a(a)(3)(I).

2

2000, which is the first month of SGA after the TWP. (*Id.* at 20). Plaintiff repaid the $7,860.00 in full in a single remittance, which the agency processed on December 2, 2003. (*Id.* at 176-77).

By letter dated January 7, 2004, defendant informed plaintiff that it had overpaid him in the amount of $47,956.00. (*Id.* at 26). Beginning in January 2004, defendant's Office of Inspector General ("OIG") conducted a fraud investigation on information that plaintiff, a beneficiary of Title II disability insurance, was working as a reverend for the Church in Laplace, Louisiana and that he was concealing his salary to continue to receive his disability benefits. (*Id.* at 95, 97). In a letter dated August 18, 2005, defendant again notified plaintiff that, from April 2000 through March 2003, he had received an overpayment of $47,956.00 in disability insurance benefits. (*Id.* at 31-33).

In correspondence dated October 22, 2007, defendant notified plaintiff that his disability had ended and that he was not entitled to payments beginning April 2000. (*Id.* at 36-38). On May 17, 2007, the United States Attorney's Office for the Eastern District of Louisiana declined to prosecute plaintiff after determining that there was not enough evidence to show that plaintiff intentionally concealed his work activity from defendant. (*Id.* at 178).

The Administrative Law Judge ("ALJ") held a hearing in this matter in Metairie, Louisiana on January 20, 2010 (*Id.* at 338-413). Plaintiff and Todd Capielano, a vocational expert ("VE") appeared and testified. On February 25, 2010, the ALJ issued a decision denying waiver of the overpayment and finding plaintiff at fault for the overpayment. (*Id.* at 13-19). The Appeals Council denied review of the ALJ's decision on September 7, 2011. (*Id.* at 5-7). Plaintiff then timely sought judicial review.

**II.     LAW AND ARGUMENT**

The Court's review is limited to determining whether the ALJ's decision is supported by substantial evidence and whether any errors of law were made. *Bray v. Bowen*, 854 F.2d 685, 686-87 (5th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980). The Court does not re-weigh the evidence or substitute its judgment for that of the ALJ. *Id.* at 627.

While the decision below determined that plaintiff is not entitled to a waiver of over payment and was at fault for the overpayment – and defendant briefs these issues in its cross-motion – plaintiff fails to raise these issues in his memorandum in support of his motion for summary judgment. The only issue that plaintiff raises here is that he never engaged in SGA from which he received sufficient amounts so as to render his disability insurance payments as overpayments. That is the only issue that the Court will address.[3]

Plaintiff concedes that he worked as a pastor or reverend for the Church, but he disputes that he worked at an SGA-level based on self-employment income. The regulations explain in detail how defendant will determine whether a self-employed individual is engaged in SGA.[4] SGA is

---

[3]   While the Court recognizes that the issue of SGA bears tangentially on the issue of overpayment, the only dispute here – and the only issue that plaintiff raises – is whether the *amount* of income that plaintiff received exceeded the "countable income" so as to actually constitute SGA. *See infra* note 4.

[4]   "Countable income" of the self-employed is considered SGA if the amount averages more than $500.00 per month for January 1990 through June 1999, $700.00 per month for July 1999 through December 2000, $740.00 per month for 2001, $780.00 per month for 2002, and $800.00 per month for calendar year 2003. *See Program Operation Manual System* (POMS) DI 10501.015 Table B, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015; *see also* 20 C.F.R. §§ 404.1572, 404.1574 (definition and discussion of SGA).

4

defined as work activity, done for pay or profit (even if no profit is realized), that involves performing significant physical or mental activities. 20 C.F.R. §§ 404.1572, 416.972; *see Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Work may be substantial even if it is part-time or the individual does less or earns less than when working previously." *Britton v. Sullivan*, 908 F.2d 328, 333 (8th Cir. 1990) (citing 20 C.F.R. § 404.1572(a)). The regulations provide that an individual's self-employment activity will be evaluated based on the value of the claimant's services to the business, regardless of whether the claimant receives an immediate income for those services. The regulations specifically provide that an individual's income will not be considered alone because the amount of income the individual actually receives may depend on a number of different factors. *See* 20 C.F.R. § 404.1575(a). Self-employment is evaluated differently from other forms of employment in that income is less reliable as an indicator of the substantial nature of the work. *See Johnson v. Sullivan*, 929 F.2d 596, 597-98 (11th Cir. 1991). Defendant considers the nature of the activities and their value to the business in relation to the actual income. *See* 20 C.F.R. §§ 404.1572, 416.972. However, earnings reported on income tax returns raise a rebuttable presumption that the taxpayer was gainfully employed. *See Johnson*, 929 F.2d at 598 (citing *Milton v. Schweiker*, 669 F.2d 554, 556 (8th Cir. 1982)).

Citing statements entitled "Profit or Loss from Business," the "Schedule C" attached to an individuals' tax return, plaintiff argues that he had a net profit of $2,399.00 in 1999, $2,590.00 in 2000, $1,154,00 in 2001 and $522.00 in 2002. (Adm. Rec. at 286-87, 291, 295 & 301). Dividing such yearly "net profits" by 12 – the number of months in the year – plaintiff contends that he had an income of $199.91 per month in 1999, $215.83 per month in 2000, $96.17 per month in 2001 and

$53.50 per month in 2002. Plaintiff maintains that these averages are far below even the lowest countable income of $500.00 per month from January 1990 through June 1999. *See supra* note 3.

The problem with plaintiff's argument here is that a "net profit" on Schedule C of plaintiff's income tax return does not constitute his income for any particular year. That number is reflected on the "Adjusted Gross Income" line of the individual's income tax return itself. Here, plaintiff filed amended tax returns in November 2006 that reflect an income of $50,870.00 in 1999, $71,404.00 in 2000, $46,014.00 in 2001 and $44,214.00 in 2002. (Adm. Rec. at 17, 211-18). Not only are these amounts far above the countable income amounts for the relevant years, but the ALJ concluded – and plaintiff does not dispute – that during these years, plaintiff continued to report "0" earnings on his Social Security records. (*Id.* at 17, 210). These earnings establish, as noted above, a rebuttable presumption that plaintiff engaged in SGA during the relevant years, and plaintiff offers no evidence to rebut that resumption. This alone constitutes substantial evidence to support the ALJ's conclusion that plaintiff engaged in SGA at all relevant times.

The only other evidence offered by plaintiff to refute the findings of the ALJ is the affidavit of Henry Mason, secretary and treasurer for the Church, in which he attests that (1) Delores Martin was never an officer, employee or member of any board of the Church[5] and (2) that plaintiff uses his cars extensively for the ministry and that the Church has never reimbursed him these expenses. (*Id.* at 226-27). But the ALJ considered these statements and found no evidence in the record to support such allegations. And it is not for this Court to try the issues *de novo*, re-weigh the

---

[5] Delores Martin allegedly started this entire dispute as a vendetta against plaintiff over a burial fee.

6

evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995).

## III. CONCLUSION

Accordingly,

Plaintiff has failed to demonstrate that substantial evidence does not support the ALJ's conclusion here that he engaged in SGA at all relevant times.[6] Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 18th day of October, 2012.

---

[6] Because plaintiff challenges only the ALJ's conclusion that he engaged in SGA at all relevant times, the Court does not address the other arguments raised by defendant.

7

_____
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**